**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION**

| | |
|---|---|
| O.R., by and through his parents, Cheryl Rogers and Greg Rogers, on behalf of himself and those similarly situated;<br><br>CHERYL ROGERS;<br><br>GREG ROGERS;<br><br>E.G., by and through her mother, Amber Galea, on behalf of herself and those similarly situated;<br><br>M.G., by and through her mother, Amber Galea; and<br><br>W.M., by and through his mother, Kersey Clark,<br><br>            *Plaintiffs*,<br><br>v.<br><br>GREENVILLE COUNTY, SOUTH CAROLINA;<br><br>GREENVILLE COUNTY LIBRARY SYSTEM;<br><br>BEVERLY JAMES, in her official capacity as Executive Director of the Greenville County Library System; and<br><br>KAREN ALLEN, in her official capacity as Youth Services Manager of the Greenville County Library System,<br><br>            *Defendants*. | Civil Action No. 6:25-cv-02599-DCC |

**MOTION TO CERTIFY FOR INTERLOCUTORY APPEAL (UNOPPOSED
BY ANY PARTY) OR, ALTERNATIVELY, TO RECONSIDER OR STAY**

WILSON JONES CARTER & BAXLEY, P.A.
Charles F. Turner, Jr.
John P. "Jack" Riordan
J. Nathan Ozmint
325 Rocky Slope Rd., Suite 201
Greenville, South Carolina 29607
(864) 672-3711

NELSON MULLINS RILEY & SCARBOROUGH LLP
Miles E. Coleman
2 West Washington Street, Suite 400
Greenville, SC 29601
(864) 373-2300

*Attorneys for Greenville County Library System; Beverly James, in her official capacity
as Executive Director of the Greenville County Library System; and Karen Allen, in her
official capacity as Youth Services Manager of the Greenville County Library System*

TABLE OF CONTENTS

INTRODUCTION AND SUMMARY ..................................................................................................1

STANDARD OF REVIEW .............................................................................................................3

TIMELINESS..............................................................................................................................5

ARGUMENT ...............................................................................................................................6

    I.    The Court should certify the March 19, 2026 Order for immediate, interlocutory appeal because it satisfies the statutory requirements of 28 U.S.C. § 1292(b)....................6

        A.    The Order raises a controlling question of law. ...........................................................7

        B.    There is substantial ground for difference of opinion as to the question of law raised in the Order. .....................................................................................................9

        C.    Immediate appeal of the Order is likely to advance the ultimate termination of the litigation. ...............................................................................................11

    II.    The Court should reconsider its Order denying in part the Library Defendants' Motion to Dismiss..................................................................................................12

    III.    Alternatively, the Court should stay this litigation pending the resolution of an appeal already before the Fourth Circuit that could also resolve the threshold legal issues in this litigation..............................................................................................14

CONCLUSION...........................................................................................................................16

## INTRODUCTION AND SUMMARY

Greenville County Library System, Beverly James, and Karen Allen (together, the "Library Defendants") move this Court to (1) amend its Order of March 19, 2026, by certifying it for an interlocutory appeal of the potentially dispositive threshold legal issues, (2) reconsider the Order, or (3) stay this case to await the Fourth Circuit's ruling in a soon-to-be-argued appeal raising similar questions in an analogous fact pattern that could be instructive in or dispositive of this case.

**1. Certification.** The Court's Order satisfies the statutory criteria for interlocutory appeal. *See* 28 U.S.C. §1292(b). It "involves a controlling question of law." *Id*. "There is substantial ground for difference of opinion" on the novel question of controlling law. *Id*. And an immediate appeal would "materially advance the ultimate termination of the litigation." *Id*.

Here, the Order considered threshold legal issues that have not yet been decided by the Supreme Court (or the Fourth Circuit) and that, if decided differently, would materially advance the conclusion of the litigation. Those questions are:

(a)     Whether public library patrons have a constitutional right to receive information that prevents a public library from removing books or limiting minors' access to them based on the books' contents or viewpoints.

(b)     Whether a public library's collection decisions, including the addition, removal, or relocation of books within the collection, is government speech that is not subject to or constrained by the Free Speech Clause.

Certification, though rare, is warranted here. If such relief is granted, the Library Defendants also request an order staying further proceedings in this Court pending the outcome of the appeal if accepted by the Court of Appeals for the Fourth Circuit.

**2. Reconsideration.** The Court's partial denial of the Library Defendants' Motion to Dismiss misapprehends the applicable law of equal protection. Just weeks ago, the Fourth Circuit ruled that—as the Library Defendants argued here—even if a facially neutral policy allegedly

1

affects primarily (or even exclusively) members of the LGBTQ community, the policy doesn't

violate the Equal Protection Clause if there's any conceivable rational basis for it. So too here.

**3. Stay.** Alternatively, the Library Defendants ask that this case be stayed to await the

Fourth Circuit's ruling in a pending appeal that's set for oral argument on May 5, 2026, and which

raises some of the same potentially dispositive issues as this case. That appeal—*SC State*

*Conference of the NAACP et al. v. Weaver et al.*, 3:25-cv-00487-SAL (D.S.C.) (filed Jan. 27,

2025), *appeal docketed*, No. 25-2216 (4th Cir. Oct. 14, 2025)—arises from a public-school

district's removal of a book from its high school library, allegedly for viewpoint-discriminatory

reasons. The issues before the Fourth Circuit in that case (as in this one) include (a) whether there

is a cognizable right to receive information from the government, (b) whether the curation of a

public library (in that case a public school library) is government speech that's not subject to or

constrained by the Free Speech Clause, and (c) whether a failed First Amendment claim can be

refashioned into an Equal Protection claim. The Fourth Circuit's holding in that case has the

potential to instruct or completely resolve this litigation. A stay of this case to await ruling in that

appeal would aid judicial economy and could save the parties the time, expense, and burden of

potentially needless litigation.

In support of reconsideration, certification, or stay, the Library Defendants submit the

following analysis and application of the governing law. [1 & 2]

---

[1] Pursuant to Local Civil Rule 7.04 (D.S.C.), a full explanation of this motion is contained herein, and a separate memorandum would serve no useful purpose.

[2] Pursuant to Local Civil Rule 7.02 (D.S.C.), consultation with the other parties' counsel is not required for a dispositive motion (here, the request for reconsideration) or for a Motion for a Stay. As to the portion of this Motion seeking certification, however, counsel for the Library Defendants conferred with Plaintiffs' counsel, who stated, "Plaintiffs do not object to the Court certifying its order to allow Defendants to pursue interlocutory review," but they "object to all of the other relief [that the Library] Defendants seek." Counsel for the Library Defendants also conferred with co-defendant Greenville County's counsel, who stated that the County does not oppose this motion.

## STANDARD OF REVIEW

**Certification of Interlocutory Appeal.** Pursuant to 28 U.S.C. § 1292(b), "[w]hen a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a *controlling question of law* as to which there is *substantial ground for difference of opinion* and that an immediate appeal from the order may *materially advance the ultimate termination of the litigation*," the district judge may certify the order for immediate appeal by making note of such findings in its order (emphasis added).

Courts are afforded broad discretion when deciding whether to certify. *See, e.g.*, *In re Trump*, 928 F.3d 360, 368–69 (4th Cir. 2019), *pet. den'd on reh'g en banc,* 958 F.3d 274 (4th Cir. 2020), *cert. granted, judgment vacated as moot sub nom. Trump v. D.C.*, 141 S. Ct. 1262 (2021) ("To be sure, the discretion conferred on district courts by § 1292(b) is broad.") (citing *Swint v. Chambers Cnty. Comm'n*, 514 U.S. 35, 47 (1995)). However, if the Court determines that the statutory requirements have been met, "it has a duty to allow an immediate appeal to be taken." *Id.* (cleaned up) (quoting *Ahrenholz v. Bd. of Trs. of the Univ. of Ill.*, 219 F.3d 674, 677 (7th Cir. 2000)). The Supreme Court has encouraged lower to courts to certify orders for appeal when the issue raised "involves a new legal question or is of special consequence." *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 110–11 (2009).

**Reconsideration.** Under Rule 54(b) of the Federal Rules of Civil Procedure, "[a]n interlocutory order is subject to reconsideration at any time prior to the entry of a final judgment." *Fayetteville Investors v. Commercial Builders, Inc.*, 936 F.2d 1462, 1469–70 (4th Cir. 1991). Courts in the Fourth Circuit look to the standards governing Rule 59(e) motions for guidance in analyzing a motion to reconsider an interlocutory order, although courts are not necessarily bound by the strictures of Rule 59(e). *See, e.g.*, *Superior Bank F.S.B. v. Tandem Nat'l Mortg., Inc.*, 197 F. Supp. 2d 298, 332 (D. Md. 2000); *R.E. Goodson Constr. Co., Inc, v. Int'l Paper Co.*, No. 4:02-

3

cv-4184, 2006 WL 1677136, at \*1 (D.S.C. June 14, 2006). A district court has the discretion to grant a Rule 59(e) motion "to correct a clear error of law or prevent manifest injustice." *Hill v. Braxton*, 277 F.3d 701, 708 (4th Cir. 2002) (internal quotation marks omitted); *see also Collision v. Int'l Chem. Workers Union, Local 217*, 34 F.3d 233, 236 (4th Cir. 1994). "[T]he rule permits a district court to correct its own errors, 'sparing the parties and the appellate courts the burden of unnecessary appellate proceedings.'" *Pacific Ins. Co. v. Am. Nat. Fire. Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 1998) (internal citation omitted).

**Stay Pending Outcome of an Associated Case.** "[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254–55 (1936); *see also* Loc. Civ. R. 16.00(C) (D.S.C.). This power extends to situations in which one litigation is stayed to await the outcome of another which would significantly impact its final resolution. *Id.*; *see also S.C. State Conf. of NAACP v. McMaster*, 572 F. Supp. 3d 215, 220 (D.S.C. 2021) ("A trial court may, with propriety, find it is efficient for its own docket and the fairest course for the parties to enter a stay of an action before, it, pending resolution of independent proceedings which bear upon the case.") (quoting *Leyva v. Certified Grocers of Cal., Ltd.*, 593 F. 2d 857, 862 (9th Cir. 1979)). Courts have discretion in how to exercise the power to stay proceedings and "must weigh competing interests and maintain an even balance." *Landis*, 299 U.S, at 245–55. "The party seeking a stay must justify it by clear and convincing circumstances outweighing potential harm to the party against whom it is operative." *Williford v. Armstrong World Indus., Inc.*, 715 F.2d 124, 127 (4th Cir. 1983).

## TIMELINESS

This motion is timely filed 20 days after the order to be reconsidered or certified. *See* Rule 54(b), Fed. R. Civ. P. (orders that adjudicate fewer than all the claims may be revised at any time before entry of a judgment adjudicating all claims); Loc. Civ. R. 16.00(C) (D.S.C.) (setting no deadline for a motion to stay). While 28 U.S.C. § 1292(b) does not contain a deadline for a motion to certify an order for immediate appeal, this motion is timely brought within a reasonable time. *See Ahrenholz v. Bd. of Trustees of Univ. of Ill.*, 219 F.3d 674, 675–76 (7th Cir. 2000) ("[T]here is no statutory deadline for the filing of the petition in the district court," but "the petition must be filed in the district court within a *reasonable time* after the order sought to be appealed.") (emphasis in original); *see also* Rule 5, Fed. R. App. P., Cmt. Notes (1967) (discussing certification and noting that a "district court can amend an order by supplying the statement required by § 1292(b) at any time after entry of the order"); *id.* Cmt. Notes (1998) (noting that the ten-day window to petition the Circuit Court for an interlocutory appeal refers to a deadline that begins to run only after the district court amends its order to include the prescribed certification language).

Courts in this district have previously certified the interlocutory appeal of orders that were over a year old. *See Municipal Ass'n of S.C. v. Serv. Ins. Co., Inc.*, No. No. 3:08-03072-MBS, 2011 WL 1325448, at *3 (D.S.C. Sept. 21, 2011) (certifying order for appeal even though "'approximately thirteen months have elapsed since this Court issued its order'"). And, in that instance, the Fourth Circuit agreed to accept the interlocutory appeal. *Municipal Ass'n of S.C. v. USAA Gen. Indemn. Co.*, 709 F.3d 276, 282 (4th Cir. 2013) ("Appellants moved the district court to certify this matter for interlocutory appeal, and the district court granted the certification. We accepted the appeal."). Here, the Library Defendants' motion, filed only 20 days after the Order, is timely. *Cf. Morris v. Flaig*, 511 F.Supp.2d 282, 314–15 (E.D.N.Y. 2007) (collecting cases indicating that only delays of two months or more in seeking certification were unreasonable).

## ARGUMENT

**I.     The Court should certify the March 19, 2026 Order for immediate, interlocutory appeal because it satisfies the statutory requirements of 28 U.S.C. § 1292(b).**

Certification of the Court's Order of March 19, 2026, is warranted because it satisfies the statutory criteria and because it involves important, novel questions that are arising with increasing frequency. The crux of the Order is "whether a public library may, without violating the First Amendment, enforce a policy that results in moving books based on their content to a separate, more restrictive section of the library." (ECF 44, at 23.) The Court determined that, theoretically, a public library could re-section books based on their content but that the decision to do so would be subject to stringent review over their motivations for doing so. (*Id.* at 28–29.) By countenancing the Plaintiffs' novel theory that they have a right to receive information from the government, the Court applied new First Amendment restrictions to the activities performed by every library every day—culling, maintaining, and structuring its catalogue. (*Id.*) So too, the Court's ruling has effectively expanded the Free Speech Clause to restrict the government's own speech through the selection and curation of the messages it wishes to convey. To counsel's knowledge, this decision is the first of its kind in this Circuit (though it won't be the last) and it raises a novel, complex issue not yet decided by the Fourth Circuit or other courts within this District.

Respectfully, the Library Defendants disagree with the Court's holding and ask that the Court certify this Order for immediate, interlocutory appeal under 28 U.S.C. § 1292(b). Even if the Court is unpersuaded by the Library Defendants' position on the merits, it should recognize that this is precisely the type of case in which interlocutory appeal is appropriate and would ultimately simplify this case, streamline litigation, and avoid wasting judicial resources. In such instances, courts are compelled to certify pursuant to § 1292(b). *See, e.g.*, *In re Trump*, 928 F.3d 360, 368–69 (4th Cir. 2019), *pet. den'd on reh'g en banc,* 958 F.3d 274 (4th Cir. 2020), *cert.*

6

*granted, judgment vacated as moot sub nom. Trump v. D.C.*, 141 S. Ct. 1262 (2021) (quoting

*Ahrenholz v. Bd. of Trs. of the Univ. of Ill.*, 219 F.3d 674, 677 (7th Cir. 2000)).

For an order to be certified for immediate appeal under § 1292(b), the movant must show

the following: (1) the order raises a controlling question of law, (2) there is substantial ground for

difference of opinion as to that question, and (3) an immediate appeal may materially advance the

ultimate termination of the litigation. As discussed below, the Library Defendants can show that

the Order satisfies each of these statutory requirements. Therefore, the Court should amend the

Order to add a certification that it is appropriate for immediate, interlocutory appeal under 28

U.S.C. § 1292(b). Upon certifying the Order, the Court should also stay this litigation pending the

resolution of the petition for interlocutory review and the appeal.

**A.      The Order raises a controlling question of law.**

Plaintiffs' First Amendment claims are based on a central question novel to this Circuit—do

individuals have a positive right to receive information from a public library? If yes, Plaintiffs

have cleared at least that threshold jurisdictional bar and the analysis may proceed. But if not, their

First Amendment claims necessarily fail. Plaintiffs' claims raise another threshold issue that's

novel as well: whether a public library's collection decisions are government speech that's not

subject to or constrained by the Free Speech Clause. It's difficult to imagine questions of law more

appropriate for interlocutory review than those.

Certification of immediate appeal is appropriate for "an order presenting a 'pure question

of law'" that does not require "delv[ing] beyond the surface of the record in order to determine the

facts." *United States ex rel. Michaels v. Agape Senior Cmty., Inc.*, 848 F.3d 330, 340–41 (4th Cir.

2017). "A question of law is generally considered to be controlling within the meaning of § 1292(b)

if the action would have been terminated had the district court ruled the opposite way." *City of

Charleston, S.C. v. Hotels.com, LP*, 586 F. Supp. 2d 538, 542 (D.S.C. 2008). Courts have also

recognized that a question is controlling if it "would materially affect the litigation's outcome," even if it doesn't necessarily terminate the action. *See Consub Delaware LLC v. Schahin Engenharia Limitada*, 476 F. Supp. 2d 305, 309 (S.D.N.Y. 2007), *aff'd*, 543 F.3d 104 (2d Cir. 2008); *see also Gilmore v. Jones*, No. 3:18-CV-00017, 2019 WL 4417490, at *3 (W.D. Va. Sept. 16, 2019) (acknowledging that a question of law may be controlling when it "substantially shorten[s] the litigation") (internal quotation omitted); *Coal. For Equity & Excellence In Maryland Higher Educ. v. Maryland Higher Educ. Comm'n*, No. CIV. CCB-06-2773, 2015 WL 4040425, at *4 (D. Md. June 29, 2015) (acknowledging that "a question also may be controlling 'if interlocutory reversal might save time for the district court, and time and expense for the litigants'") (quoting 16 Wright et al., Federal Practice & Procedure § 3930).

Determining the existence of a supposed positive right to receive information from the government would materially impact this litigation—if not completely resolve it. In deciding this issue, a higher court would not need to address any facts of the dispute and is free to base its conclusion entirely on questions of law. Courts have certified similar legal issues as controlling for purposes of § 1292(b). *See, e.g.*, *Kennedy v. St. Joseph's Ministries, Inc.*, 657 F.3d 189 (4th Cir. 2011) (noting in a case with "First Amendment implications" that "the requirements of § 1292(b) are clearly satisfied in this case" because "[w]e are faced with a pure question of law and our resolution of it terminates the case"); *Kennedy v. Villa St. Catherine, Inc.*, No. No. PWG–09–3021 (WDQ), 2010 WL 9009364, at *1 (D. Md. June 16, 2010) ("A question of law as used in section 1292(b) has reference to a question of the meaning of a statutory or constitutional provision[.]") (cleaned up).

For these reasons, the Order presents a controlling question of law and should be certified for immediate, interlocutory appeal.

8

**B.      There is substantial ground for difference of opinion as to the question of law raised in the Order.**

Plaintiffs' novel theory of law is untested in this district and the Fourth Circuit. Across the country, courts are trying to answer similar questions, meaning these questions are of national significance. Indeed, First Amendment jurisprudence in the library context has long been disputed and unsettled, as shown by the fractured decisions in *Bd. of Educ., Island Trees Union Free Sch. Dist. No. 26 v. Pico*, 457 U.S. 853 (1982).  To the extent courts have addressed the right-to-receive-information issue, the results so far are mixed. This Court's recent ruling, for example, is inescapably inconsistent with *Little v. Llano County*, 138 F.4th 834, 848, 850–51 (5th Cir. 2025) (*en banc*) (finding there is no constitutional right for library patrons to receive or to have continued access to a book of their choosing from a public library).[3] And just two days ago (a few weeks after the Order in this case), the Eighth Circuit weighed in on an analogous case and adopted a similar analysis to that of *Little*. *See Penguin Random House, LLC v. Robbins*, No. 25-1819, slip op. at 5–6 (8th Cir. April 6, 2026) ("[T]he removal of a book from a school library does not prevent a student from 'receiving' the information" and acknowledging that "[t]he First Amendment does not guarantee students the right to access books of their choosing at taxpayer expense"). The same is true of the government speech question. In *Little*, a plurality (though not a majority) of the en banc Fifth Circuit concluded that a public library's collection curation was government speech not subject to or constrained by the Free Speech Clause. 138 F.4th at 860–61, 865.[4]

---

[3] The parallels between this case and *Little* are notable. Of the 17 books the public library in *Little* had removed, four were "young adult books touching on sexuality and homosexuality" and two were books "centering on gender identity and dysphoria." *Little v. Llano Cnty.*, 103 F.4th 1140, 1144 (5th Cir. 2024) rev'd by *Little v. Llano Cnty.*, 138 F.4th 834 (5th Cir. 2025) (*en banc*).

[4] Ten of the 17 judges of the Fifth Circuit joined the part of the opinion holding that the defendants' decision to remove the 17 books did not infringe plaintiffs' alleged right to receive information. The divergent viewpoints on this issue among the en banc court reinforce the fact that, in the words of § 1292(b), there is substantial ground for difference of opinion on the controlling issues of law.

There is substantial ground for difference of opinion when "controlling law is unclear." *Int'l Refugee Assistance Project v. Trump*, 404 F. Supp. 3d 946, 950 (D. Md. 2019) (citing *Couch v. Telescope Inc.*, 611 F.3d 629, 633 (9th Cir. 2010)). Courts generally find that there is substantial ground for disagreement when circuits disagree on the issue of law, the relevant court of appeals has not spoken on the issue, or the issue is novel and without significant legal guidance. *See, e.g.*, *id.* ("[C]ourts find substantial grounds 'where the circuits are in dispute on the question and the court of appeals of the circuit has not spoken on the point, if complicated questions arise under foreign law, or if novel and difficult questions of first impression are presented.'"); *Nat'l Veterans Legal Servs. Program v. United States*, 321 F. Supp. 3d 150, 155 (D.D.C. 2018) ("A substantial ground for difference of opinion is often established by a dearth of precedent within the controlling jurisdiction and conflicting decisions in other circuits."); *DRFP, LLC v. Republica Bolivariana de Venezuela*, 945 F. Supp. 2d 890, 918 (S.D. Ohio 2013) ("[A] substantial ground for difference of opinion exists only when 1) the question is difficult, novel and either a question on which there is little precedent or one whose correct resolution is not substantially guided by previous decisions; 2) the question is difficult and of first impression; 3) a difference of opinion exists within the controlling circuit; or 4) the circuits are split on the question.") (internal citation omitted). Courts may recognize that substantial ground for disagreement exists, even if the Court ultimately finds the arguments unpersuasive. *See, e.g.*, *Nat'l Veterans Legal Servs. Program v. United States*, 321 F. Supp. 3d 150, 155 (D.D.C. 2018); *Kennedy v. Villa St. Catherine, Inc.*, No. PWG-09-3021 WDQ, 2010 WL 9009364, at *3 (D. Md. June 16, 2010).

When faced with legal issues of particular significance, courts are more likely to determine that there is substantial ground for disagreement. *See, e.g.*, *Coal. For Equity & Excellence in Maryland Higher Educ. v. Maryland Higher Educ. Comm'n*, No. CIV. CCB-06-2773, 2015 WL 4040425, at *6 (D. Md. June 29, 2015) ("The level of uncertainty required to find a substantial

10

ground for difference of opinion should be adjusted to meet the importance of the question in the context of the specific case.") (quoting 16 Wright et al., Federal Practice & Procedure § 3930.); *In re Health Diagnostic Lab'y, Inc.*, No. 15-32919-KRH, 2017 WL 2129849, at *4 (E.D. Va. May 16, 2017) (same); *see also Kennedy v. Villa St. Catherine*, No. PWG-09-3021 WDQ, 2010 WL 9009364, at *3 (D. Md. June 16, 2010) (acknowledging that substantial grounds for disagreement "may be found by virtue of the strong public policy purpose served by [the at-issue statute]" and the fact that the order's impact "permits government intervention into a religious organization").

The legal questions presented in this litigation—and addressed in the Order—are novel, nationally important, and unsettled. For these reasons, the Order raises a question on which there is substantial ground for disagreement and should be certified for immediate, interlocutory appeal.

**C.     Immediate appeal of the Order is likely to advance the ultimate termination of the litigation.**

By its very nature, this case is likely to result in lengthy, expensive, and resource-intensive litigation. Because Plaintiffs assert a novel theory of law with their alleged positive right to receive information from a public library, significant judicial resources will be expended to resolve the nature, scope, and existence of that right. It is very possible that the parties will invest years into this case, only for the Court (or a subsequent appellate court) to determine that there was never any cognizable right in the first place.

Immediate appeal of an Order materially advances the ultimate termination of the litigation when it deters "protracted and expensive litigation." *Int'l Refugee Assistance Project v. Trump*, 404 F. Supp. 3d 946, 951 (D. Md. 2019) (citing *Fannin v. CSX Transp., Inc.*, 873 F.2d 1438, 1989 WL 42583, at *2 (4th Cir. 1989)). Courts commonly consider whether immediate appeal would result in a shorter trial, easier and more efficient discovery, simplified issues due to resolution of complex areas of law, or even the conclusion of the dispute altogether. *See, e.g.*, *Lynn v. Monarch*

11

*Recovery Mgmt., Inc.*, 953 F. Supp. 2d 612, 626 (D. Md. 2013) ("In determining whether certification will materially advance the ultimate termination of the litigation, a district court should consider whether an immediate appeal would: '(1) eliminate the need for trial, (2) eliminate complex issues so as to simplify the trial, or (3) eliminate issues to make discovery easier and less costly.'") (citing *Orson, Inc. v. Miramax Film Corp.*, 867 F. Supp. 319, 322 (E.D. Pa. 1994)); *In re Health Diagnostic Lab'y, Inc.*, No. 15-32919-KRH, 2017 WL 2129849, at *4 (E.D. Va. May 16, 2017) (same); *Eckmann v. Tchrs. Ins. & Annuity Ass'n of Am.*, No. 3:24-CV-00001, 2025 WL 2731839, at *10 (W.D.N.C. Sept. 25, 2025) (same).

By certifying this question for immediate appeal, the Court creates an opportunity to determine the key issue in this litigation, reducing the need for extensive motions practice, discovery, and perhaps even trial. For these reasons, this Order should be certified for immediate, interlocutory appeal because such an appeal would materially advance this litigation.

## II.     The Court should reconsider its Order denying in part the Library Defendants' Motion to Dismiss.

In addition to the threshold issues noted above, the Order of March 19, 2026 erred by allowing an Equal Protection claim to proceed despite the fact that the Amended Complaint alleges only that the Library Defendants treated *materials* discriminatorily and there's no dispute that the library's policies treat every similarly situated *person* the same. Plaintiffs cannot plausibly allege an Equal Protection claim when, as here, every child, teen, and adult patron—regardless of their sexual orientation or gender identity or any other factor—has exactly the same access to the same materials as every other child, teen, or adult patron. In the Court's view, however, this facially equal treatment could nevertheless constitute disparate treatment in violation of the Equal Protection Clause because Plaintiffs allege that "the law's *impact* falls on the minority." (ECF No. 44, at 17–18) (quotation omitted) (emphasis added).

The Library Defendants already explained how the Supreme Court's ruling in *Skrmetti* rebuts that view here. And just a few weeks ago, the Fourth Circuit rebutted that point again and bolstered the argument the Library Defendants raised here. *See Anderson v. Crouch*, 169 F.4th 474 (4th Cir. 2026) (holding that a state Medicaid plan's denial of coverage for sex change surgeries did not violate the equal protection rights of the transgender plaintiffs). The *Anderson* court repeatedly explained that when a law applies equally without reference to a person's gender identity, it doesn't violate the Equal Protection Clause:

> At its core, the Clause prevents States from "treating differently persons who are in all relevant respects alike." [] Yet this prohibition's scope should not be exaggerated. "The Equal Protection Clause does not forbid classifications' categorically, and laws often deal in classifications to solve particular problems or to achieve targeted outcomes. . . . '[U]neven effects upon particular groups within a class are ordinarily of no constitutional concern." . . . Generally speaking, *laws that apply evenhandedly to all 'unquestionably comply'* with the Equal Protection Clause. . . . Indeed, the Supreme Court has made clear that the mere fact that a law primarily—or even exclusively—affects a protected class cannot alone establish an equal protection claim.

*Id*. at 482–84 (citations omitted) (emphasis added). In *Anderson*, for example, even though the *effect* of the challenged policy allegedly fell *exclusively* on transgender people, the Fourth Circuit nevertheless expressly concluded that the policy didn't discriminate on the basis of transgender status and was constitutional. *Id*. at 486 n.9. The same reasoning applies here. Even assuming that the effect of the challenged library policies falls especially (or even exclusively) on LGBTQ library patrons, the policies do not discriminate on the basis of that status. So, as long as the Court can discern from the record (the Amended Complaint and the materials incorporated therein) any possible rational, non-discriminatory reason for the even-handed policy—and here, it can—the policies survive constitutional muster.[5] *See id*. at 491 (noting that in such a situation the court will

---

[5] The Fourth Circuit's ruling in *Anderson* came after an extensive procedural history, including a ruling on summary judgment below, a prior appeal, and summary vacatur and remand from the Supreme Court. The Circuit Court's reasoning, however, was not dependent on that posture, and

13

uphold an enactment "so long as there is '*any* reasonably *conceivable* state of facts that could provide a rational basis'" for it) (quoting *Skrmetti*, 605 U.S. at 522)) (emphasis added).

**III.    Alternatively, the Court should stay this litigation pending the resolution of an appeal already before the Fourth Circuit that could also resolve the threshold legal issues in this litigation.**

If this Court determines that it will not reconsider or certify the Order for immediate appeal, the Library Defendants ask that the above-captioned case be stayed pending resolution of *SC State Conference of the NAACP et al. v. Weaver et al.*, 3:25-cv-00487-SAL (D.S.C.) (filed Jan. 27, 2025), *appeal docketed*, No. 25-2216 (4th Cir. Oct. 14, 2025), which is pending appeal in the United States Court of Appeals for the Fourth Circuit. The appeal will be argued less than a month after this motion is filed.

The *Weaver* appeal arises from a suit alleging that (i) a public school violated the First Amendment by removing a book from its high-school library, allegedly for viewpoint-discriminatory reasons, and (ii) the state Department of Education allegedly infringed on students' right to receive information by declining immediately to assign a permanent course code to an African American Studies class. It is very possible that the Fourth Circuit will address legal issues raised in *Weaver* that are exceedingly similar to those presented in this case, including whether the curation of a public-school library is government speech that's not subject to or constrained by the Free Speech Clause, whether public school students have a cognizable right to receive (or have continued access to) information provided by a government entity, and whether a failed First

---

it applies equally here: even when a facially neutral policy has an effect that allegedly falls primarily or even exclusively on a protected class, the policy does not violate the Equal Protection clause so long as there is "*any* reasonably *conceivable*" non-discriminatory basis for the challenged action. Here, there was, and it's expressly discernable from the Amended Complaint, namely the Library Board's contemporaneous, stated desire (which was explicitly incorporated into the written policy that's challenged in this suit) to acknowledge and defer to the fundamental constitutional right of parents to direct the upbringing and education of their children. *See* Am. Compl. (ECF 5) at ¶¶ 47, 54, 64, 74, 79; Library Collection Policy (ECF 5-1) at 3, 8–9, 13.

Amendment claim can be refashioned into an Equal Protection claim even though the challenged action treats every similarly situated person equally.

The impact of such a holding would be significant and could even resolve this litigation in its entirety. Waiting for the Fourth Circuit to make its determination would give this Court the benefit of the Fourth Circuit's guidance on the legal issues in this case, which is particularly useful as this case raises novel issues with very little legal precedent.

This Court commonly applies the following factors when deciding whether to stay a proceeding: "(1) the interests of judicial economy; (2) hardship and equity to the moving party if the action is not stayed; and (3) potential prejudice to the non-moving party." *S.C. CVS Pharmacy, LLC, v. SCP 2001A-CSF-75 LLC, et al.*, No. 2:24-525-JDA-SVH, 2026 WL 524730, at *2 (D.S.C. Jan. 22, 2026) (quoting *Goose Creek Physical Med. v. Kennedy*, No. 2:22-CV-03932-DCN, 2025 WL 2085939, at *2 (D.S.C. July 24, 2025)); *Impulse Monitoring, Inc. v. Aetna Health*, No. 3:14-CV-02041-MGL, 2014 WL 4748598, at *1 (D.S.C. Sept. 23, 2014) (same); *Johnson v. DePuy Orthopaedics*, No. 3:12-CV-2274-JFA, 2012 WL 4538642 , at *2 (D.S.C. Oct. 1, 2012) (same).

Here, judicial economy is best served by staying this case until the Fourth Circuit resolves the appeal in *Weaver*. It is possible that the Fourth Circuit's ultimate decision in that matter will significantly impact if not outright decide the legal issues raised in this litigation. Waiting for that order could provide this Court with useful guidance and avoid the risk of issuing decisions conflicting with those of the Fourth Circuit. In the interim, if this case is not stayed, the Library Defendants would expend significant time and resources litigating this case without the benefit of the Fourth Circuit's ruling. This hardship is compounded by the fact that there is already very little binding precedent to direct this lawsuit. All parties—including Plaintiffs—would benefit from a potential ruling by the Fourth Circuit. If Plaintiffs face any prejudice at all, it is surely outweighed by the benefits of staying this case.

Accordingly, the Library Defendants respectfully ask this Court to stay the above-captioned case pending resolution of *NAACP et al. v. Weaver et al.*, which will be argued in just a few weeks.

<u>CONCLUSION</u>

For the foregoing reasons, the Library Defendants respectfully request—without opposition from any party—that the Court certify its March 19, 2026 Order for immediate, interlocutory appeal pursuant to 28 U.S.C. § 1292(b). In the alternative, the Library Defendants request the Court reconsider its March 19, 2026 Order, and/or stay this case pending resolution of the soon-to-be-argued appeal in *NAACP et al. v. Weaver et al.*

NELSON MULLINS RILEY & SCARBOROUGH LLP

By: /s/ Miles E. Coleman
    Miles E. Coleman (Fed. Bar No. 11594)
    E-Mail: miles.coleman@nelsonmullins.com
    2 W. Washington Street / Suite 400
    Greenville, SC 29601
    (864) 373-2300

WILSON JONES CARTER & BAXLEY
    Charles F. Turner, Jr. (Fed. ID No. 05849)
    E-Mail: cfturner@wjcblaw.com
    J. Nathan Ozmint (Fed. ID No. 14360)
    E-Mail: jnozmint@wjcblaw.com
    John P. "Jack" Riordan (Fed. ID No. 07314)
    E-Mail: jpriordan@wjcblaw.com
    325 Rocky Slope Rd., Suite 201
    Greenville, South Carolina 29607
    (864) 672-3711

*Attorney for the Greenville County Library System, Beverly James, in her official capacity as Executive Director of the Greenville County Library System, and Karen Allen, in her official capacity as Youth Services Manager of the Greenville County Library System*

Greenville, South Carolina
April 8, 2026